IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Reynard Allen Reynolds, | ) | No. CV 06-1196-PHX-DGC (HCE) |
| | ) | |
| Petitioner, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| Dora Schriro, et. al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |
| | ) | |

Pending before the Court is Petitioner's *pro se* Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.

Pursuant to the Rules of Practice of this Court, this matter was referred to the undersigned Magistrate Judge for a Report and Recommendation. For the following reasons, the Magistrate Judge recommends that the District Court dismiss the Petition as untimely, or, alternatively, deny the Petition on the merits.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The instant action arises from Petitioner's entry of plea agreements in two separate cases filed in Maricopa County Superior Court. The underlying state criminal actions commenced on June 25, 2002, when an information was filed in Maricopa County Superior Court charging Petitioner with one count of burglary in the second degree, a class 3 felony. (Answer, Ex. A) On August 9, 2002, an information was filed in Maricopa County Superior Court charging Petitioner with one count of burglary in the second degree, a class 3 felony. (Answer, Ex. B). The State subsequently filed allegations that Petitioner had eight prior historical felonies, that he committed the current offenses while released from confinement,

and that the current offenses were multiple offenses not committed on the same occasion. (Answer, Ex. C)

On July 7, 2003, Petitioner, who was represented by counsel, entered into two plea agreements wherein he agreed to plead guilty in each cause number to one count of burglary in the second degree with one historical prior felony conviction.  (Answer, Ex. D) The State dismissed all allegations of prior felony convictions but for the one listed in the plea agreements.[1]  (*See also* Answer, Ex. D; Doc. No. 15)   Each plea agreement specified in pertinent part that "[t]he crime carries a presumptive sentence of *6.5* years; a minimum sentence of *4.5* years (*3.5* years if trial court makes exceptional circumstances finding); and a maximum sentence of *13* years (*16.25* years if trial court makes exceptional circumstances finding)." (Doc. No. 15) (emphasis in original) In each case, the parties further stipulated:

> The sentences...[in both cases] *can be served concurrently or consecutively to each other, but the defendant shall not be sentenced to less than 6.5 years or more than 13 years in the Department of Corrections.*

(Id.) (emphasis in original) At the July 7, 2003, change of plea hearing for both criminal actions, the trial court advised Petitioner "of the range of possible sentence...," "any special conditions of sentencing", and "of all pertinent constitutional rights and rights of review." (Answer, Ex. D)  Petitioner admitted his prior felony conviction of possession of narcotic drugs.  (Id.)

At the August 26, 2003 sentencing, the trial court found that Petitioner "knowingly, intelligently, and voluntarily waived all pertinent constitutional and appellate rights and entered a plea of guilty."  (Answer, Ex. E) The court also found that Petitioner "has been convicted of the following prior felony offenses: POSSESSION OF NARCOTIC DRUGS,

---

[1]On February 20, 2007, the Court ordered Respondents to submit the plea agreements entered by Petitioner in the underlying state criminal actions.  (Doc. No. 14)  On February 21, 2007, Respondents filed the plea agreements (Doc. No. 15). Pursuant to the plea agreements, Petitioner admitted that he, "while represented by counsel, was convicted in Maricopa County CR 2000-09509 of Possession of Narcotic Drugs, a class 4 felony committed on January 21, 2000, sentenced on May 15, 2000." (Doc. No. 15)

a class 4 NONDANGEROUS felony committed on January 21, 2000 and convicted on May 15, 2000 in CR2000-090509 in Maricopa County, Arizona." (Id.) (capitalization in original) The court dismissed "[a]ll allegations of Prior Felony Convictions except for the one listed in paragraph 2 as reflected in the Plea Agreement." (Id.) Petitioner was sentenced to aggravated concurrent sentences of 10 years of imprisonment on each count. (Id.)

On August 26, 2003, Petitioner signed forms captioned: "Notice of Rights of Review after Conviction and Procedure" for each criminal action. (Answer, Ex. O) The forms contained information about "Right to Appeal" which had been crossed out. The forms also contained information about "Right to Post-Conviction Relief" advising Petitioner in pertinent part that he had the "right to petition the superior court for post-conviction relief" under Rule 32 of the Arizona Rules of Criminal Procedure. (Id.) Petitioner was advised of the time period within which to seek such relief. (Id.) Petitioner was also advised: "You should execute the *Affidavit of Indigency* contained in the Notice of Post-Conviction Relief and request that a lawyer be appointed to represent you if you cannot afford to hire a lawyer. If you want a full copy of the rules governing appeals and post-conviction relief, the clerk of the court in the county where you were convicted will send you one upon request." (Id.) (emphasis in original)

Over one year later, on September 24, 2004, Petitioner filed a Notice of Post-Conviction Relief in each cause number as well as a "Motion to Declare Notice of Post Conviction Relief Timely Filed" (hereinafter "PCR petition"). (Answer, Ex. F, G) Petitioner set forth three grounds to support post-conviction relief:

(1)     ineffective assistance of counsel for failure to notify Petitioner of his rights under *Apprendi v. New Jersey,* 530 U.S. 466 (2000), and for failure to advise the trial court that the indictment, plea agreements, and aggravated sentences failed to comply with *Apprendi*;

(2)     the State created an impediment to Petitioner timely accessing the court to raise the instant claims because the law libraries at the Maricopa County Jail

and the Arizona Department of Corrections were constitutionally inadequate' and

     (3)     "Newly Discovered '*Apprendi*' Claim."

(Answer, Ex. G)

On October 13, 2004, the trial court issued a minute entry dismissing Petitioner's Notice of Post-Conviction Relief and denying Petitioner's Motion to Declare Notice of Post-Conviction Relief Timely.  (Answer, Ex. H) The trial court found that Petitioner's Petition for Post-Conviction Relief was untimely filed.  (Id.)  The court rejected Petitioner's claim that *Blakely v. Washington,* 542 U.S. 296 (2004) "is a significant change of law that applies to his case" in light of the fact that his conviction became final when he failed to timely file a Rule 32-of right petition, and, like *Apprendi, Blakely* is not retroactive to final convictions. (Id.)

On November 4, 2004, Petitioner filed with the state court a Motion to Rehear and Reverse the October 13, 2004 Order.  (Answer, Ex. I) Petitioner argued, *inter alia,* that he was not seeking retroactive application of "2004 precedent" (i.e., *Blakely*) and that his late filing should be excused due to his attorney's ineffective assistance of counsel.  (Id.)

On November 18, 2004, the trial court denied Petitioner's Motion to Rehear and Reverse the October 2004 Order as follows in pertinent part:

> [Petitioner/Defendant] claims that had his trial attorney told him about *Apprendi*, he would have timely sought Rule 32 relief.  However, *Apprendi* was decided long before defendant was sentenced.  His attorney's alleged ineffectiveness regarding *Apprendi* does not excuse defendant from the timeliness requirements of Rule 32.  The fact that defendant may have only recently learned about *Apprendi* also does not constitute newly discovered evidence pursuant to Rule 32.1(e).  No good cause appearing, IT IS ORDERED denying defendant's Motion to Rehear and Reverse....

(Id.)

On December 20, 2004, Petitioner filed with the state appellate court a Petition for Review of the trial court's orders denying Rule 32 relief.  (Answer, Ex. K) Petitioner raised the following questions for review:

1.      Whether his trial counsel was ineffective under *Roe v. Flores-Ortega,* 528 U.S. 470 (2000), thus excusing Petitioner's untimely Rule 32 proceeding;

2.      "Did Arizona's shortcomings in their prison libraries *impede* Reynolds [sic] right to appeal and is this a proper ground for relief under Rule 32...."; and

3.      "Under the *novel* circumstances spawned by the above ground..., does Reynolds [sic] recent discovery of the *Apprendi* line of authority–constitute a proper claim under subsection [32.2](e)."

(Id.)  (emphasis in original)  On August 15, 2005, the state court of appeals denied review without comment.  (Answer, Ex. L)

On September 15, 2005, Petitioner filed a Petition for Review with the Arizona Supreme Court.  (Answer, Ex. M) Petitioner raised the same grounds as he raised before the court of appeals.  On March 9, 2006, the Arizona Supreme Court denied Petitioner's Petition for Review without comment.  (Answer, Ex. N)

On May 1, 2006, Petitioner filed his Petition for Writ of Habeas Corpus with this Court.  The Petition was signed on April 26, 2006.   A habeas petition is deemed filed when handed by the inmate to a prison official for mailing.  *See Houston v. Lack,* 487 U.S. 266, 270-271 (1988).  The Court deems the Petition commencing this action as filed on April 26, 2006.  *See id.*

Petitioner raises the following claims in his pending habeas petition:

1.      His sentence is illegal under the Sixth and Fourteenth Amendments because it was imposed in violation of *Apprendi v. New Jersey,* 530 U.S. 466 (2000); and

2.      His trial counsel was ineffective for failure to object to the sentence as improper under *Apprendi* and for failure to discuss with Petitioner the filing of an appeal or post-conviction relief petition.

- 5 -

## II.   DISCUSSION

Respondents contend that Petitioner's Petition is untimely under the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA").

### A.   Statute of Limitations

The AEDPA "imposes a one-year statute of limitations on habeas corpus petitions filed by state prisoners in federal court." *Malcom v. Payne,* 281 F.3d 951,955 (9th Cir. 2002) (citing 28 U.S.C. § 2244(d)(1)), *overruled in part on other grounds by Pace v. DiGuglielmo,* 544 U.S. 408 (2005).  The AEDPA provides that

> [t]he limitation period shall run from the latest of–
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.§ 2244(d)(1)(A)-(D).

The statute of limitations may be statutorily or equitably tolled.  *Malcom*, 281 F.3d at 955; *see also Harris v. Carter,* 515 F.3d 1051, 1055 n.4 (9th Cir. 2008).  The limitations period is statutorily tolled when a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending...."  28 U.S.C. § 2244(d)(2).  Equitable tolling may apply where the petitioner establishes that: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way.  *Pace,* 544 U.S. at 418 (2005).

Respondents contend that Petitioner's case became final on direct review on August 26, 2003 when the trial court accepted Petitioner's guilty pleas, entered judgment, and imposed sentence.  (Answer, p.6 (*citing Isely v. Arizona Dep't. of Corrections,* 383 F.3d

1054, 1055 (9th Cir. 2004)) After Respondents filed their Answer, the Ninth Circuit rejected such an argument, "notwithstanding *Isley.*" *Summers v. Schriro,* 481 F.3d 710, 713-717 (9th Cir. 2007) (holding that Arizona's Rule 32 of-right proceeding for plea-convicted defendants is a form of direct review within the meaning of 28 U.S.C. § 2244(d)(1)). Instead, for Arizona criminal defendants, like Petitioner herein, who stand convicted pursuant to a guilty plea, the conviction becomes final for purposes of the AEDPA statute of limitations upon "the conclusion of the Rule 32 of-right proceeding and review of that proceeding, or until the expiration of the time for seeking such proceeding or review." *Summers,* 481 F.3d at 711. Under Arizona law, Petitioner had 90 days from the entry of judgment and sentence to file a notice of post-conviction relief, which would initiate the Rule 32 of-right proceeding. *See* Ariz.R.Crim.P. 32.4 (2003) ("the notice [of post-conviction relief] must be filed within ninety days after the entry of judgment and sentence...."); (*see also* Answer, Ex. O (advising Petitioner of same)) Thus, Petitioner's conviction became final 90 days after his August 26, 2003 sentencing, i.e., November 24, 2003. *See Summers,* 481 F.3d at 716-717; Ariz.R.Crim.P. 32.4. Further, the AEDPA one-year statute of limitations commenced running the following day, i.e., November 25, 2003, and expired on November 26, 2004,[2] unless Petitioner could establish an alternate calculation of the time period was appropriate under section 2244(d)(1) and (2), and/or that equitable tolling applied.

Petitioner argues that his Petition is timely under 28 U.S.C. §2244(d)(2), or alternatively, under 28 U.S.C. §§ 2244(d)(1)(B) and 2244(d)(1)(D). Morever, Petitioner contends that the statute of limitations is subject to equitable tolling for essentially the same reasons that would support application of sections 2244(d)(1)(B) and (D).

---

[2]Because November 25, 2004 fell on Thanksgiving Day, the statute of limitations expired the following business day, November 26, 2004. *See Patterson v. Stewart,* 251 F.3d 1243, 1245-1246 (9th Cir. 2001) (holding that Fed.R.Civ.P. 6(a) applies to the calculation of AEDPA's limitations period).

B.      Analysis

     1.      Statutory tolling under 28 U.S.C. §2244(d)(2)

Section 2244(d)(2) excludes from the AEDPA limitations period the time during which a properly filed application for state post-conviction relief or other collateral review is pending.  28 U.S.C. §2244(d)(2).  Petitioner argues that he had until November 2004 to seek federal habeas relief and that the filing of his September 2004 state PCR petition tolled the AEDPA limitations period until after the Arizona Supreme Court denied his petition for review on March 9, 2006, thus rendering his April 2006 federal Petition timely.

However, the state court denied Petitioner's PCR claims as untimely.  (*See* Answer, Ex. H, J) A state court's denial of a request for post-conviction relief as untimely, signifies that the post-conviction proceeding was not 'properly filed,' and petitioner therefore 'is not entitled to statutory tolling under section 2244(d)(2).  *Pace,* 544 U.S. at 417; *see also Allen v. Siebert,* __ U.S. __, 128 S.Ct. 2 (2007) ("We...reiterate now what we held in *Pace*: 'When a post-conviction petition is untimely under state law, that [is] the end of the matter for purposes of section 2244(d)(2).'" (*quoting Pace,* 544 U.S. at 414)); *Bonner v. Carey,* 425 F.3d 1145, 1148-49 (9th Cir. 2005), *amended,* 439 F.3d 993 (9th Cir. 2006)(state court's imposition of procedural bar of untimeliness, even joined with denial on the merits, means petition was not properly filed for purposes of section 2244(d)(2)).  Because the state court rejected Petitioner's PCR petition as untimely, Petitioner is not entitled to statutory tolling under section 2244(d)(2).  *Id.*

     2.      State Impediment

Petitioner contends that the State did not provide access to adequate law library materials which would enable him to discover his *Apprendi* claim within the time frame to file a timely PCR petition.  Specifically, Petitioner claims that he was not provided adequate access to a law library or legal assistance at the Maricopa County Jail.  (Additional Facts and Authority attached to Petition (hereinafter "Att. to Petition"), at p.4) According to Petitioner, the Maricopa County Jail did not "provide a person trained in law to provide general legal

research or advice...to detainees."  (Id. at pp.4-5) Instead, materials were available only to detainees who were representing themselves and who knew in advance what to "order up." (Id. at p.5) Upon conviction, Petitioner was moved to the Arizona Department of Corrections (hereinafter "ADOC").  According to Petitioner,  although ADOC allowed access to a law library, the library itself was inadequate.  (Id. at p.5) Additionally, paralegals at ADOC were prohibited "from rendering *any* legal advice beyond how to fill out a   Court form." (Id.)(emphasis in original).  According to Petitioner, "during the relevant years of 2002-2003, [he] had no knowledge of the *then* recent 1999-2002 changes in the Grand Jury and Sentencing laws...The short-comings in the combined Jail-Prison systems prevented [him] from exercising his right to [a]ppeal his sentence in a timely manner.  As the systems provided no method for [Petitioner] to learn of recent U.S. Supreme Court decisions on the law of the land." (Id.) (emphasis in original) (*See also* Id. at p.6 ("Had the State provided him with a meaningful method of learning that his aggravated sentence violated the above body of law, Reynolds would have *timely* objected...") (emphasis in original)) Petitioner maintains that upon learning about the *Apprendi* decision through a prisoner newsletter,[3] he sought assistance from a "fellow inmate with knowledge in this area of law," and thereafter "promptly sought relief through" the state court and ultimately filed the Petition herein.  (Id. at p.6)

Under section 2244(d)(1)(B), the AEDPA statute of limitations will commence on the date when a state-created impediment to filing the federal petition is removed if such impediment prevented the petitioner from filing the federal petition earlier.  28 U.S.C. §2244(d)(1)(B).  Section 2244(d)(1)(B) applies only to impediments created by state action that  violate the Constitution or laws of the United States.  *Id.*; *Shannon v. Newland,* 410 F.3d 1083, 1088 n.4 (9th Cir. 2005).  Further, "[t]o obtain relief under section 2244(d)(1)(B), the petitioner must show a causal connection between the unlawful impediment and his

---

[3]The newsletter is entitled: *Coalition For Prisoners' Rights Newsletter.*  (Petition, Ex. 5)

failure to file a timely habeas petition." *Bryant v. Arizona Attorney Gen.,* 499 F.3d 1056, 1060 (9th Cir. 2007).

The constitutional right of meaningful access to the courts prohibits state officials from actively interfering with inmates' attempts to prepare or file legal documents. *Lewis v. Casey,* 518 U.S. 343, 350 (1996). The Constitution does not establish a prisoner's per se right to a law library or to legal assistance. *See Id.* at 350-351. Instead, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* at 351 (internal quotation marks and citation omitted).

Because Petitioner was detained at the Maricopa County jail prior to conviction and while he was represented by counsel, that time does not necessarily factor into the AEDPA statute of limitations analysis. After conviction and sentencing, Petitioner was incarcerated at ADOC where he asserts he did not have access to Supreme Court case law although he did have access to Arizona statutes that he claims were unconstitutional. In some cases, inadequate legal materials may be an "impediment" which justifies untimely filing or can form the basis for equitable tolling. *See Whalem/Hunt v. Early,* 233 F.3d 1146, 1148 (9th Cir. 2000). *See also Roy v. Lampert,* 465 F.3d 964, 972 n.3 (9th Cir. 2006). If the requirements of section 2244(d)(1)(B) are met, "[t]he limitations period would then run from the date on which the impediment is removed." *Bryant,* 499 F.3d at 1060.

Even assuming that lack of access to U.S. Supreme Court cases as alleged by Petitioner constituted an impediment sufficient to satisfy section 2244(d)(1)(B), the instant petition would still be time-barred. *See e.g. Bryant,* 499 F.3d at 1060 (assuming without specifically deciding whether circumstances constituted an impediment where the petition would still be time-barred even if tolling under section 2244(d)(1)(B) applied).

Petitioner contends that he was unaware of the *Apprendi* decision until September 2004 when he read about it in a newsletter. (*See* Petition, Ex. 5) Thereafter, he filed his state PCR petition on September 24, 2004. Under Petitioner's reasoning, (1) the AEDPA statute

of limitations did not begin to run until he learned about *Apprendi* in September 2004; (2) the September 2004 filing of his PCR petition tolled the AEDPA statute of limitations under section 2244(d)(2)[4] until the March 9, 2006 denial of Petitioner's petition for review by the state supreme court; and, thus, (3) Petitioner's federal habeas petition filed on April 26, 2006 is timely.  However, as discussed above, the untimely filing of Petitioner's PCR petition did not toll the AEDPA statute of limitations. See *supra*, at p. 8.  Instead, the filing of Petitioner's state PCR petition showed Petitioner was no longer impeded from accessing the courts.[5]  Because the Petition herein was filed over one year after removal of the alleged impediment, the  Petition is untimely filed. *See Bryant,* 499 F.3d at 1060.

It follows that this same analysis also forecloses Petitioner's claim that the statute of limitations should be equitably tolled due to the alleged state-created impediment.

Moreover, on the instant record, Petitioner's alleged impediment would not merit equitable tolling given his lack of diligence.  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights

---

[4]Under section 2244(d)(2) the time during which a properly filed application for state post-conviction relief or other collateral review is pending is excluded from AEDPA statute of limitations calculation.

[5]The record reflects that at that point, Petitioner had not exhausted his state remedies, a condition precedent for granting federal habeas relief. *See* 2254 U.S.C. §2254(b),(c).  "That would not have prevented him from *filing* a federal petition, however, and asking that it be stayed pending exhaustion.  *See Pace,* 544 U.S. at 416 (prisoners may avoid the risk of having the federal statute of limitations expire while they are exhausting their state remedies 'by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted.') (citing *Rhines v. Weber,* 544 U.S. 269, 277...(2005))."  *Beyett v. Yates,* 2007 WL 2600745, *2 n.2 (N.D.Cal. Sept. 10, 2007) (emphasis in original) (applying *Pace* where petitioner filed untimely state petition before *Pace* was decided).  *See also Bryant,* 499 F.3d at 1060 (no tolling under section 2244(d)(1)(B) or equitable tolling where petitioner did not establish that he was aware of the AEDPA statute of limitations during time when alleged impediment was in place); *Meza-Sayas v. Conway,* 2007 WL 2601086, *9 (D. Idaho Sept. 10, 2007) ("It cannot be said that Petitioner's state court problems [i.e. untimely state-court filing, among other things] *prevented* him from filing his federal habeas corpus petition or *caused* its lateness, because there is no indication in the record that Petitioner had an awareness of a federal remedy, or that he planned to file a federal habeas corpus action.")(citing *Bryant,* 499 F.3d at 1060)

diligently, and (2) that some extraordinary circumstance stood in his way." *Pace,* 544 U.S. at  418; *see also Mendoza v. Carey,* 449 F.3d 1065, 1071  n.6 (9th Cir. 2006).  "[T]he threshold necessary to trigger equitable tolling under [the] AEDPA is very high, lest the exceptions swallow the rule." *Mendoza,* 449 F.3d at 1068 (citation omitted).  The obligation to act diligently "'does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is exhausting state court remedies as well.'" *Roy,* 465 F.3d at 974 (*quoting LaCava v. Kyler,* 398 F.3d 271, 272 (3rd Cir. 2005)). Petitioner does not assert that he ever requested Supreme Court case law or that he in any other way attempted to obtain such material from ADOC.  Nor does he assert that he attempted to gain relief concerning the alleged lack of adequate legal materials. *Compare Roy,* 465 F.3d 964 ("By alleging what they did to pursue their claims and complain about their situations..." petitioners may be entitled to equitable tolling).  "'[I]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file, after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken.'" *Id.,* (*quoting Spitsyn v. Moore,* 345 F.3d 796, 802 (9th Cir. 2003)).  Given Petitioner's lack of diligence, the alleged unavailability of Supreme Court case law does not trigger equitable tolling in this case.

### 3.    Discovery of Claim

Petitioner alternatively argues that pursuant to 28 U.S.C. § 2244(d)(1)(D),  the AEDPA statute of limitations did not begin to  run until after he learned about the *Apprendi* decision in September 2004. (Reply, p. 5)  Section 2244(d)(1)(D) provides that the AEDPA statute of limitations begins to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).  The record is clear that at the time of his conviction, Petitioner was aware of the factual predicate of his claims herein, i.e., that he was sentenced above the presumptive term and that his counsel did not discuss with him appeal/post conviction relief.

To the extent that the *Apprendi* decision prompted Petitioner to seek federal habeas relief, *Apprendi* is the legal predicate for Petitioner's claims, not the factual predicate or evidence, relevant to his guilt or sentence.  *See Hasan v. Galaza,* 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) (AEDPA statute of limitations begins to run when the petitioner knows the important facts, not when the petitioner recognizes their legal significance).  Because Petitioner was aware of the pertinent facts at the time his conviction became final, application of section 2244(d)(1)(D) does not alter the statute of limitations calculation herein.

### 4.    Equitable Tolling:  Ineffective Assistance of Counsel

Only when "an attorney's misconduct is 'sufficiently egregious' [will it] constitute an 'extraordinary circumstance' warranting equitable tolling of AEDPA's statute of limitations." *Spitsyn,* 345 F.3d at 800.  Petitioner alleges that trial counsel's ineffectiveness in failing to advise him of "his non-frivolous appeal grounds" under *Apprendi* should excuse his untimely federal Petition.  (Reply, pp. 4-5)*; see also* Id. at p. 2 (Petitioner's "state sentencing attorney never notified him that he could appeal his sentence under *Apprendi* and that had he known so, a timely appeal would have been filed.")  Had counsel informed him about the *Apprendi* decision, Petitioner asserts he would have timely sought post-conviction relief on grounds that his sentence did not comply with that decision.  However, on this record, it cannot be said that counsel's failure to advise Petitioner of the *Apprendi* decision constitutes an extraordinary circumstance warranting equitable tolling given that, as discussed *infra*, at pp. 19-21, Petitioner's sentence complies with *Apprendi.*  Counsel's failure to advise Petitioner of a frivolous argument, such as the *Apprendi* argument raised herein, does not constitute an extraordinary circumstance which would warrant equitable tolling.  Petitioner has failed to carry his burden of establishing equitable tolling.

### 5.    Actual Innocence

Finally, Petitioner asserts that his petition is not barred in light of the "actual innocence" exception under *Schlup v. Delo,* 513 U.S. 298 (1995).  (Petition, p.5; Att. to Petition, pp. 10-11)  "The actual innocence gateway...may be available to a petitioner whose petition is otherwise barred by AEDPA's limitations period." *Beyett,* 2007 WL 2600745, *3 (*citing  Majoy v. Roe,* 296 F.3d 770, 776-777 (9th Cir. 2002)(analyzing *Schlup* exception in a non-capital case)).  This exception is limited to habeas petitioners who can establish that "a constitutional violation has probably resulted in conviction of one who is actually innocent." *Schlup,* 513 U.S. at 327.  To demonstrate actual innocence, a petitioner "need not show that he is 'actually innocent' of the crime he was convicted of committing...." *Majoy,* 296 F.3d at 776.  Instead, he must "present evidence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error." *Schlup,* 513 U.S. at 316.

Petitioner herein does not attempt to show that he was actually innocent but instead challenges his sentence which is not enough to establish that there was a fundamental miscarriage of justice sufficient to avoid the limitations bar under *Schlup*.  *See Beyett,* 2007 WL 2600745 at *3  ("Petitioner here does not show, or even attempt to show, *actual* innocence; rather, he argues that the procedure followed at his sentencing was constitutionally flawed. He thus has failed to establish that there was a fundamental miscarriage of justice sufficient to avoid the limitations bar.") Further, "[e]ven if the actual innocence exception extends to sentencing, Petitioner has not alleged that he is "actually innocent' of the enhancement" based upon the prior conviction.  *Hatcher v. Schriro,* 2008 WL 2397338, * 11 (D.Ariz. March 26, 2008) (denying claim of actual innocence exception with regard to sentencing issue)    In sum, Petitioner is not entitled to the actual innocence exception.

C.      Alternative Ruling on the Merits

        1.      Introduction

In 2004, when Petitioner filed his state PCR petition, Ninth Circuit law provided that an untimely petition for state post-conviction relief "was 'properly' filed for purposes of section 2244(d) and tolled the [AEDPA] statute of limitations while the petition was pending in the state courts."  *Harris,* 515 F.3d at 1053 (*citing Dictado v. Ducharme,* 244 F.3d 724, 727-728 (9th Cir. 2001), *overruled by Pace,* 544 U.S. 408)).  Specifically, in *Dictado* the Ninth Circuit held "that if a state's rule governing the timely commencement of state postconviction relief petitions contains exceptions that require a state court to examine the merits of a petition before it is dismissed, the petition, even if untimely, should be regarded as 'properly filed.'" *Dictado,* 244 F.3d at 727-728.  Like the statutes at issue in *Dictado* and *Harris*, the Arizona statute did not impose an absolute bar to filing late post-conviction relief petitions.  *See e.g.*  Ariz.R.Cr.P. 32.1 (d),(e),(f),(g),(h).   Under *Dictado,* "AEDPA's clock was stopped" from September 24, 2004 to March 9, 2006 while Petitioner's PCR petition was pending before the state courts.  *Harris,* 515 F.3d at 1053.  Petitioner, thus, had 63 days of the AEDPA limitations period remaining after the Arizona Supreme Court's denial of his PCR petition.  Because Petitioner filed his federal petition less than 63 days after the Arizona Supreme Court denied review, his  Petition filed herein would have been timely under *Dictado*.  *See Harris,* 515 F.3d at 1053-1054.

The Ninth Circuit recently held that equitable tolling of the AEDPA statute of limitations was warranted where the petitioner argued that "he relied on controlling Ninth Circuit precedent [i.e. *Dictado*] in waiting to file his federal habeas petition" until after completion of his successive and untimely state post conviction proceedings.  *Id.* at 1054-1056.  Relevant to the court's ruling was that the petitioner diligently pursued his rights by filing "successive petitions for state post-conviction relief while ensuring that enough time would remain to file a federal habeas petition under the then-existing *Dictado* rule.  The Supreme Court's overruling of the *Dictado* rule made it impossible for [the petitioner] to file

a timely petition. [The petitioner's] petition became time-barred the moment that *Pace* was decided.  Finally, [the petitioner] had no control over the operative fact that caused his petition to become untimely–the Supreme Court's decision in *Pace*.  These are precisely the circumstances in which equitable tolling principles justify tolling of the statute of limitations."  *Id.* at 1055-1056.

Petitioner herein does not specifically argue that he relied on *Dictado* in deciding to pursue his state court remedies prior to filing his federal habeas petition.  Nor does he allege that he was aware of the AEDPA statute of limitations when he filed his PCR petition.  He also acknowledges the *Pace* decision, which was decided while his state PCR petition was pending.  However, he also cites *Dictado* and another Ninth Circuit case  *Malcom v. Payne,* 281 F.3d 951 (9th Cir. 2002), which, as Petitioner asserts, held that "late PCR petitions [were] 'properly filed' if state rule exception for late/successive filing used; even if state court deems filing untimely after deciding 'merits' exception)." (Reply, p.8) The *Malcolm* court relied on *Dictado* to support its ruling.

Petitioner's pro se statements when construed liberally and considered together with the timing of his state PCR petition, which was filed prior to the *Pace* decision, could support equitable tolling under the Ninth Circuit's recent decision in *Harris*.  *See Harris,* 515 F.3d. At 1057 ("Equitable principles dictate that we toll AEDPA's statute of limitations in the rare case where a petitioner relies on our legally erroneous holding in determining when to file a federal habeas petition.") It is unnecessary to require further briefing to determine whether Petitioner, like the *Harris* petitioner, diligently pursued his rights *in reliance* on then-existing Ninth Circuit precedent under *Dictado*, because even if Petitioner were entitled to equitable tolling on this ground, his Petition fails on the merits.

2.    Standard of Review: Merits

Pursuant to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), the Court may grant a writ of habeas corpus only if the state court proceeding:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court and section 2254(d)(2) applies to purely factual questions resolved by the state court.  *Lambert v. Blodgett,* 393 F.3d 943, 978 (9th Cir. 2004), *cert. denied* 546 U.S. 963 (2005).  Therefore, the question whether a state court erred in applying the law is a different question from whether it erred in determining the facts.  *Rice v. Collins,* 546 U.S. 333, 342 (2006).  In conducting its review, the Court "look[s] to the last-reasoned state-court decision."  *Van Lynn v. Farmon,* 347 F.3d 735, 738 (9th Cir. 2003) *cert. denied* 541 U.S. 1037 (2004).

Section 2254(d)(1) consists of two alternative tests, i.e., the "contrary to" test and the "unreasonable application" test.  *See Cordova v. Baca,* 346 F.3d 924, 929 (9th Cir. 2003).  Under the first test, the state court's "decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Clark v. Murphy,* 331 F.3d 1062, 1067 (9th Cir. 2003) (citing *Williams v. Taylor,* 529 U.S. 362, 413-414 (2000)).   Additionally, a state court's decision is "'contrary to' Supreme Court case law if the state court 'applies a rule that contradicts the governing law set forth in' Supreme Court cases."[6]  *Van Lynn,*  347 F.3d at 738 (quoting *Early v. Packer,* 537 U.S. 3, 8 (2002)).  "Whether a state court's interpretation

_____

[6]"[T]he *only* definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams,* 529 U.S. at 412...While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, *Duhaime v. Ducharme,* 200 F.3d 597, 600-01 (9th Cir.1999), only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied."  *Clark,* 331 F.3d at 1069 (emphasis in original).

of federal law is *contrary* to Supreme Court authority...is a question of federal law as to which [the federal courts]...owe no deference to the state courts." *Cordova,* 346 F.3d at 929 (emphasis in original) (distinguishing deference owed under the "contrary to" test of section (d)(1) with that owed under the "unreasonable application" test).

Under the second test, " '[a] state court's decision involves an unreasonable application of federal law if the state court identifies the correct governing legal principle...but unreasonably applies that principle to the facts of the prisoner's case.'" *Van Lynn*, 347 F.3d at 738 (quoting *Clark,* 331 F.3d at 1067). Under the "'unreasonable application clause...a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly...[r]ather that application must be objectively unreasonable.'" *Clark,* 331 F.3d at 1068 (quoting *Lockyer v. Andrade,* 538 U.S. 63 (2003)). When evaluating whether the state court decision amounts to an unreasonable application of federal law, "[f]ederal courts owe substantial deference to state court interpretations of federal law...." *Cordova,* 346 F.3d at 929.

Under section 2254(d)(2), which involves purely factual questions resolved by the state court,  "the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record." *Lambert,* 393 F.3d at 978; *see also Taylor v. Maddox,* 366 F.3d 992, 999 (9th Cir.), *cert. denied* 534 U.S. 1038 (2004) ("a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually  unreasonable.") Section (d)(2) "applies most readily to situations where petitioner challenges the state court's findings based entirely on the state record.  Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence,...that the process employed by the state court is defective,...or that no finding was made by the state court at all." *Taylor,* 366 F.3d at 999 (citations omitted). When examining the record under section 2254(d)(2), the federal court "must be particularly

deferential to our state court colleagues... [M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that *any* appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" *Lambert,* 393 F.3d at 972 (*quoting Taylor,* 366 F.3d at 1000) (emphasis in original).  Once the federal court is satisfied that the state court's fact-finding process was reasonable, or where the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness, which then helps steel them against any challenge based on extrinsic evidence, i.e., evidence presented for the first time in federal court."[6] *Taylor,* 366 F.3d at 1000.  *See also* 28 U.S.C. section 2254(e).

Both section 2254(d)(1) and (d)(2) may apply where the petitioner raises issues of mixed questions of law and fact.  Such questions "receive similarly mixed review; the state court's ultimate conclusion is reviewed under [section] 2254(d)(1), but its underlying factual findings supporting that conclusion are clothed with all of the deferential protection ordinarily afforded factual findings under [sections] 2254(d)(2) and (e)(1)." *Lambert,* 393 F.3d at 978.

### 3.    Claim One:  *Apprendi*

Under each plea agreement herein, the presumptive sentence was 6.5 years of imprisonment, the minimum sentence was 4.5 years of imprisonment, and the maximum sentence was 13 years of imprisonment (*16.25* years if the trial court made an exceptional

---

[6]Under section 2254(e) "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1). The "AEDPA spells out what this presumption means:  State-court fact-finding may be overturned based on new evidence presented for the first time in federal court only if such new evidence amounts to clear and convincing proof that the state-court finding is in error....Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state-court's fact-findings survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference implicit in the 'unreasonable determination' standard of section 2254(d)(2)." *Taylor,* 366 F.3d at 1000.

circumstances finding).  Petitioner and the prosecution further stipulated that Petitioner would be sentenced to no less than 6.5 years and no more than 13 years imprisonment.

Petitioner's conviction became final in November 2003.  *See Summers,* 481 F.3d at 713-717.  At that time, *Apprendi* was applicable to Petitioner's case.  Under *Apprendi,*

> Other than the fact of a prior conviction,[7] any fact that increases the penalty for a crime beyond the prescribed *statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt.

*Apprendi,* 530 U.S. at 490 (emphasis added).  When Petitioner was convicted, "*Apprendi* was widely understood...to apply only if the sentence imposed exceeded the statutory maximum", which in this case, under the plea agreements, was 13 years of imprisonment.  *State v. Febles,* 115 P.3d 629, 636 (Ariz. App. 2005).  Petitioner was sentenced to 10 years of imprisonment in each case to run concurrently. Although Petitioner's sentence in each case exceeded the presumptive term of 6.5 years, the sentences did not exceed the statutory maximum under *Apprendi*. Thus, the record reflects no *Apprendi* violation.

In July 2004, well after Petitioner's conviction became final,  the U.S. Supreme Court modified *Apprendi* by holding that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*..In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

*Blakely,* 542 U.S. at 303 (citations omitted) (emphasis in original).  *Blakely* does not apply retroactively to collateral review of a conviction, like Petitioner's, that was final before that decision was  announced.  *Schardt v. Payne,* 414 F.3d 1025 (9th Cir. 2005) (holding that *Blakely* does not apply retroactively to cases on collateral review); *Febles,* 115 P.3d at 635 ("*Blakely* only applies to cases not yet final when the opinion was issued.")  Moreover, even under *Blakely* and *Apprendi*, Petitioner's sentence was lawful. The Arizona Supreme Court has applied *Blakely* and *Apprendi* to Arizona's sentencing scheme.  It has held that the

---

[7]Petitioner admitted to one prior conviction in his plea agreements.

*statutory maximum* for purposes of *Apprendi* and *Blakely* analysis is the presumptive sentence established for a defendant's crime.  *State v. Brown,* 99 P.3d 15, 18 (Ariz. 2004); *see also State v. Brown,* 129 P.3d 947, 949 (Ariz. 2006).  The existence of a single aggravating factor exposes a defendant to an aggravated sentence within the range prescribed by statute.  ARS § 13-702(B).  Aggravating factors can be *Blakely*-exempt ("Other than the fact of a prior conviction,...") as in the instant case. Aggravating factors can also be admitted, i.e., *Blakely*-compliant, by a defendant:

> therefore, once...a defendant admits a single aggravating factor, the Sixth Amendment permits the sentencing judge to find and consider additional factors relevant to imposition of a sentence *up to the maximum prescribed in that statute.*

*State v. Martinez,* 115 P.3d 618, 625 (Ariz. 2005) (emphasis added).  The sentencing judge may consider "[a]ny other factor that the court deems appropriate to the ends of justice."  ARS § 13-702(C)(20) (2003).  If additional facts are relevant, the Sixth Amendment permits a sentencing judge to find those facts by a preponderance of the evidence.[8]  (Id.)

The trial court's sentence was within the terms of Petitioner's plea agreements.  Because the record reflects a prior conviction, which Petitioner admitted, neither *Apprendi* nor *Blakely* prevented imposition of a sentence in Petitioner's case beyond the statutory presumption.  Consequently, on this record, the state court's sentence was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  *See Apprendi,* 530 U.S. at 490*; Jernigan v. Tucker,* 2007 WL 163079 (D.Ariz. Jan. 18, 2007) ( "[o]nce one [prior] conviction has been established, the judge is free to impose the maximum sentence...within the plea agreement.");  *Holderman v. Schriro,* 2007 WL 3256473 (D.Ariz. Nov. 2, 2007) (same).  Nor did the state court's proceeding result in a decision that was based on an unreasonable determination of the evidence presented.

---

[8]"Preponderance of the evidence" requires a fact-finder to determine whether a fact sought to be proven is more probable than not.  *Kent K v. Bobby M,* 110 P.3d 1013, 1018-1019 (Ariz. 2005).

### 4.      Claim Two:  Ineffective Assistance of Counsel

Petitioner claims that his sentencing counsel was ineffective for failing to raise an objection under *Apprendi* at sentencing or on appeal, for failing to advise Petitioner that the sentence was illegal under *Apprendi,* and for failing to discuss appeal with Petitioner at all.

In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court established a two-part test for evaluating ineffective assistance of counsel claims.   To prevail on such a claim, the petitioner  must show that: (1) counsel's representation fell below the range of competence demanded of counsel in criminal cases; and (2) the petitioner  suffered actual prejudice as a result of counsel's incompetence.   *See Strickland,* 466 U.S. 668.   The *Strickland* test also applies to a petitioner's challenge of his guilty plea based upon ineffective assistance of counsel.  *Washington v. Lampert,* 422 F.3d 864,  872 (9th Cir. 2005) (citing *Hill v. Lockhart*, 474 U.S. 52 (1985)).   In such a context, "the ineffectiveness inquiry probes whether the alleged ineffective assistance impinged on the [petitioner 's] ability to enter an intelligent, knowing and voluntary plea of guilty."  *Lambert,* 393 F.3d at 980.   To establish that counsel was ineffective during plea proceedings, the petitioner  must show that: (1) counsel's representation fell below the range of competence demanded of counsel in criminal cases; and (2) but for counsel's advice, the petitioner  wound not have pleaded guilty.  *Hill,* 474 U.S. at 58-59; *Lambert*, 393 F.3d at 980; *Washington,* 422 F.3d at 873.

To establish deficient performance*,* Petitioner must show that counsel made errors so serious "that counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms.  *Strickland,* 466 U.S. at 687-688.  The relevant inquiry is not what defense counsel could have done, but rather whether the decisions made by defense counsel were reasonable.  *Babbit v. Calderon,* 151 F.3d 1170, 1173 (9th Cir. 1998); *Turner v. Calderon,* 281 F.3d 851, 880 (9th Cir. 2002) ("in plea situations...the question [is] not whether counsel's advice [was] right or wrong, but...whether that advice was within the range of competence demanded of attorneys in criminal cases.") In considering this factor, counsel is strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment.  *Strickland,* 466 U.S. at 690.
The Ninth Circuit has "explained that '[r]eview of counsel's performance is highly
deferential and there is a strong presumption that counsel's conduct fell within the wide
range of reasonable representation.'"  *Ortiz v. Stewart,* 149 F.3d 923, 932 (9th Cir. 1998)
(quoting *Hensley v. Crist,* 67 F.3d 181, 184 (9th Cir. 1995)).  "The reasonableness of counsel's
performance is to be evaluated from counsel's perspective at the time of the alleged error and
in light of all the circumstances, and the standard of review is highly deferential."
*Kimmelman v. Morrison,* 477 U.S. 365, 381 (1986).  Additionally, "a fair assessment of
attorney performance requires that every effort be made to eliminate the distorting effects of
hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate
the conduct from counsel's perspective at the time."  *Strickland,* 466 U.S. at 689.

In the context of a guilty plea, "'[i]n order to satisfy the 'prejudice' requirement, the
[petitioner] must show that there is a reasonable probability that, but for counsel's errors, he
would not have pled guilty and would have insisted on going to trial.'"  *Lambert,* 393 F.3d at
980 (*quoting Hill,* 474 U.S. at 59).  *See also Washington,* 422 F.3d at 873 (same).

Because failure to make the required showing of either deficient performance or
prejudice defeats the claim, the court need not address both factors where one is lacking.
*Strickland,* 466 U.S. at 697-700.

As discussed above, Petitioner's sentence did not violate *Apprendi.*  Moreover,
because the prior conviction was clearly exempt from the *Apprendi* rule, reasonable counsel
would not have raised an *Apprendi* challenge in these circumstances.  *See  Morrison v.
Estelle,* 981 F.2d 425, 427-428 (9th Cir. 1992) (counsel's failure to raise an issue on appeal
does not constitute ineffective assistance if the issue was not reasonably likely to succeed);
*Shah v. United States,* 878 F.2d 1156, 1162 (9th Cir. 1989) ("The failure to raise a meritless
legal argument does not constitute ineffective assistance of counsel.")

Petitioner's claim for relief on the ground that counsel allegedly failed to confer with
Petitioner about appeal is equally without merit.  The United States Supreme Court has

declined to "say, as a *constitutiona*l matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient." *Roe v. Flores-Ortega,* 528 U.S. 470, 479 (2000) (emphasis in original). Instead of adopting "a bright-line rule that counsel must always consult with the defendant regarding an appeal," the Court held "that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known." *Id.* at 480 (citation omitted). The Court further stated that "a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* In such cases, factors for consideration include whether the defendant received the sentence bargained for under the plea agreement and whether the plea expressly reserved or waived all appeal rights. *Id.* Additionally, to show prejudice, the petitioner "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 1038.

Petitioner herein received a sentence within the range of sentences specified in the plea agreements. Petitioner waived his right to appeal as part of the plea agreements. He also received information concerning his right to post-conviction relief and the deadlines for same. The record does not support the conclusion that a rational defendant in Petitioner's circumstances would have desired an appeal or that Petitioner sufficiently demonstrated to counsel an interest in an appeal. Consequently, it cannot be said on this record that counsel's alleged failure to discuss post-conviction relief with Petitioner was unreasonable and, therefore, unconstitutional. Because Petitioner has failed to establish deficient performance on the part of counsel, the Court need not address prejudice. *See Strickland,* 466 U.S. at 697-

700.   Accordingly, the state rulings herein were not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.   Nor did the state court's proceeding result in a decision that was based on an unreasonable determination of the evidence presented.

## III.   CONCLUSION

Petitioner's Petition is untimely filed.   Moreover, even if equitable tolling of the AEDPA statute of limitations under *Harris* is appropriate, the Petition is without merit.

## IV.   RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court dismiss Petitioner's Petition for Writ of  Habeas Corpus (Doc. No. 1) as untimely or, alternatively, deny the Petition on the merits.

Pursuant to 28 U.S.C. §636(B), any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. If objections are filed, the parties should use the following case number: **CV 96-1196-PHX-DGC.**   A party may respond to another party's objections within ten days after being served with a copy thereof.  *See* Fed.R.Civ.P. 72(b).

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived.  *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

The Clerk of Court is directed to send a copy of this Report and Recommendation to the parties and/or their counsel.

DATED this 10th day of July, 2008.

_____
Héctor C. Estrada
United States Magistrate Judge